UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINE ENGINEERS' BENEFICIAL ASSOCIATION, AFL-CIO, DISTRICT No. 1-PCD,<br><br>Plaintiff,<br><br>v.<br><br>ECO-ALPHA ENVIRONMENTAL AND ENGINEERING SERVICES, INC.,<br><br>Defendants. | No. 2:24-cv-02937-DJC-CSK<br><br>**ORDER** |

This case concerns a collective-bargaining agreement between Plaintiff Marine Engineers' Beneficial Association ("MEBA") and Defendant Eco-Alpha Environmental and Engineering Services, Inc. ("Eco-Alpha"). Plaintiff alleges that this agreement governs Defendant's failure to renegotiate certain terms following the extension of a contract between Defendant and the State of California, which Defendant denies. The Court finds that the Federal Arbitration Act provides the framework for interpreting the agreement, and that the agreement expressly requires the parties to arbitrate disagreements about its applicability. Accordingly, the Court hereby DENIES Defendant's Motion to Dismiss (ECF No. 11, hereinafter "Mot.").

////

////

## FACTS

Eco-Alpha is a Sacramento, California corporation that provides engineering services to government clients. (ECF No.1, hereinafter "Pet." ¶¶ 3, 13.) MEBA is a labor organization that represents workers employed by Eco-Alpha. (*Id.* ¶¶ 2, 6.) The parties signed a collective-bargaining agreement (*see* ECF No. 1, Ex. A, hereinafter "MOU") on January 1, 2021, governing a contract awarded to Eco-Alpha by the State of California's Department of General Services for the provision of various engineering and building services. Under the MOU, the parties agreed that any dispute over contract interpretation is subject to arbitration. (*Id.* § 4.1.) The parties also agreed that the MOU "will remain in effect as long as Eco-Alpha . . . has contractual control for stationary work at the building sites listed . . . [in the] MOU." (*Id.* § 6.1.) The MOU allows either party to formally express their desire to reopen the agreement to discuss follow-on terms during specific date ranges identified in the agreement. (*Id.*) If the parties engage in discussions around follow-on terms but are subsequently unable to reach an agreement, they are required to submit the dispute to a fair "baseball style" arbitration process, under which an arbitrator may choose between the parties' proposal. (*Id.*)

On January 26, 2023, MEBA sent a letter to Eco-Alpha expressing its intent to reopen and renegotiate the MOU terms, which was within the window of time window permitted under the MOU to do so. (ECF No. 1, Ex. B.) After first acknowledging MEBA's intent to revisit the MOU terms, Eco-Alpha informed MEBA that Eco-Alpha intended to terminate the MOU, stating that because Eco-Alpha no longer had contractual control for the specific project, the MOU was no longer binding. (ECF No. 1, Ex. D.) During this period, Eco-Alpha successfully engaged in a competitive bidding process with the State of California Department of General Services for a follow-up contract to its previous work that was covered by the MOU. (ECF No. 1, Ex. E.) Eco-Alpha subsequently refused to communicate with or engage in an arbitration or grievance process related to the MOU. (Pet. ¶ 15.) While Eco-Alpha's new contract

with the State of California overlaps substantially with the previous contract, the new contract has altered terms from its previous one: it outlines new services, a different payment structure, new service locations, and an increased level of staffing with specific staff type requirements. (Mot at 8.)

Argument on this Motion was scheduled for February 20, 2025. Attorneys for Eco-Alpha failed to appear, and the matter was taken under submission without oral argument. (ECF No. 20.)

**LEGAL STANDARD**

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). While the Court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party," *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995), if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be granted, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("*Iqbal*").

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

////

**DISCUSSION**

Although the MOU does not specify whether state or federal law governs the contract, federal law can properly be applied. Because Eco-Alpha's subsequent contract with the State of California may plausibly be considered an extension of the original contract that would fall in the ambit of a provision in the MOU that disagreements over the scope or applicability of the agreement must be arbitrated, the Court is unable to dismiss the instant case.

### A. The Federal Arbitration Act provides a framework for assessing the MOU

The MOU is silent as to whether state or federal law apply, and the parties disagree on the extent to which the Federal Labor Management Relations Act ("LMRA") or the California Arbitration Act ("CAA") govern, although both parties concede that this Court may look to the Federal Arbitration Act ("FAA"). (*See* Mot. at 10 ("[T]he Court may look to the FAA for guidance."); *see also* ECF No 17, "Opp'n." at 6 ("[F]ederal courts may look to the FAA for guidance in labor arbitration cases").) MEBA brings its original petition under the LMRA and FAA, so the Court will first look to those statutes. (*See* Pet. ¶ 4.)

The Court finds that the LMRA covers the type of dispute at issue here. The LMRA specifically provides jurisdiction to federal district courts for "actions and proceedings by or against a labor organization." 29 U.S.C. § 185(c); *see Hotel Employees, Rest. Employees Union, Local 2 v. Marriott Corp.*, 961 F.2d 1464, 1466, n.3 (9th Cir. 1992) (The LMRA "grants the district court jurisdiction to hear claims based on agreements 'between employers and labor organizations significant to the maintenance of labor peace between them,'" quoting *Retail Clerks Int'l Ass'n, Local Unions Nos. 128 & 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 28 (1962)). While the LMRA does not explicitly invoke petitions or motions to compel arbitration, it encompasses "suits for violations of contracts between an employer and a labor organization," like the one at issue here. 29 U.S.C. § 185(a). And it directs "federal courts to fashion a body of federal common law to be used to address disputes arising

1  out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985)
2  (internal quotations omitted).
3      The Court finds the FAA's general arbitration clause principles to be applicable
4  here.  Under the FAA, a "written provision . . . or a contract evidencing a transaction
5  involving commerce to settle by arbitration a controversy thereafter arising out of such
6  contract or transaction, or the refusal to perform the whole or any part thereof, or an
7  agreement in writing to submit to arbitration an existing controversy arising out of
8  such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable."  9
9  U.S.C. § 2.  A party can sue in federal district court to enforce an arbitration
10 agreement.  *Id.* § 4; *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir
11 1982) (recognizing that "courts have power to remand cases to an arbitration panel in
12 certain circumstances under the Federal Arbitration Act . . . as well as under the
13 federal common law governing labor arbitrations").  There is a presumption that "the
14 FAA supplies the rules for arbitration."  *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266,
15 1270 (9th Cir. 2002).  With this in mind, the Court finds that the expansive body of FAA
16 case law provides an appropriate lens for the Court to assess the instant dispute.
17     "To overcome [a presumption that the FAA applies], parties to an arbitration
18 must evidence clear agreement to incorporate state law rules for arbitration."  *Fid.*
19 *Fed. Bank, FSB. V. Durga Ma Corp.*, 386 F.3d 1306, 1311 (9th Cir. 2004) (internal
20 quotations omitted).  Here, while Eco-Alpha asserts that the CAA, rather than federal
21 law, applies, it is unable to point to *any* evidence, let alone clear evidence, that there
22 was an agreement to incorporate state law rules to govern the dispute.  Further, Eco-
23 Alpha is unable to identify a similar case in which a court applied state, rather than
24 federal, arbitration law.  Indeed, in the only case that Eco-Alpha cites for the
25 proposition that the Court can apply the CAA rather than the FAA, the court
26 recognized that it could properly look to the LMRA or the FAA to settle the dispute.
27 *See Intl. All. of Theatrical Stage Employee and Moving Picture Technicians Artists, and*
28 *Allied Crafts of the U.S., It's Trusteed Loc. 720 Las Vegas, Nevada v. InSync Show*

1  *Productions, Inc.*, 801 F.3d 1033, 1039–40 (9th Cir. 2015) ("Even reviewing this case . . .
2  as strictly [an LMRA] case, we properly could look to the FAA for guidance.").  Given
3  the dearth of support for Eco-Alpha's position, the Court finds that the CAA does not
4  control over the MOU.

**B.  The parties created a valid agreement which encompasses the dispute at issue**

When applying the FAA's framework, a court must determine: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.  *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016).  "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011).

Here, the parties only facially contest whether an arbitration agreement exists. MEBA asserts that the MOU, which was signed by both parties, is a valid arbitration agreement.  (*See generally*, Pet.)  In response, Eco-Alpha argues that the previous MOU does not apply to the contractual dispute that gave rise to this case because Eco-Alpha no longer has control over the work previously contemplated by the parties, and thus, there is no existing agreement as to the new contract.  (Mot. at 12.) Although the follow-on contract is largely for the same type of work at many of the same locations covered by the MOU, Eco-Alpha points to the different terms between the language in the original contract and the follow-up one as evidence that it no longer has contractual control under the terms of the first MOU.  (*Id.* at 7, 8.)  Properly understood, however, Eco-Alpha is not actually contesting that there is or is not an MOU, but merely that the previous MOU <u>does not apply</u> to the existing contract.  In other words, Eco-Alpha recognizes that an MOU <u>does</u> exist: it is simply arguing that the previous MOU does not apply here.  Because both parties recognize that the MOU exists, the only question for the Court is whether the MOU encompasses the dispute at issue.

6

    The Court finds that the MOU's language plausibly encompasses the dispute at issue. Section 6.1 of the MOU provides that the agreement covers the parties as long as Eco-Alpha "has contractual control for stationary work at the building sites listed" in the MOU. (MOU § 6.1.) Whether that condition is met is central to the parties' disagreement, which is concerned with whether under Eco-Alpha's new follow-up contract it maintains control over the stationary work. However, Section 4.1 of the MOU specifically outlines that "[a]ll disputes relating to the interpretation or performance of this MOU shall be resolved in accordance with" the MOU's express arbitration process. (MOU § 4.1.) In other words, the dispute as to whether the MOU applies to the follow-up contract is directly contemplated by the MOU, and thus within the scope of the agreement. The parties explicitly agreed that disputes as to the interpretation of the MOU would be settled by an arbitrator as outlined in the MOU. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[D]istrict courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") The Court therefore finds that the MOU encompasses the dispute at issue and that review by an arbitrator is appropriate. *See AmeriPride Servs., LLC v. Teamsters Loc. 87*, 2024 WL 4107280, *9–11 (E.D. Cal. Sept. 6, 2024) (requiring parties to arbitrate the arbitrability of a dispute because the controlling agreement bound the parties to do so).

    Eco-Alpha is not able to overcome MEBA's assertions that there is a valid agreement (the MOU) that encompasses the dispute at issue here. Accordingly, the Court must deny Defendant's Motion to Dismiss.

////

////

////

////

////

////

**CONCLUSION**

The Court hereby DENIES Defendant's Motion to Dismiss (ECF No. 11.) Within fourteen days from the date of this Order, the parties are ORDERED to file a Joint Status Report detailing their respective positions as to how to litigate this case considering the Court's decision denying the Motion to Dismiss.

IT IS SO ORDERED.

Dated:  **February 26, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC5 – MEBA24cv02937.mtd